Filed 6/29/23

**CERTIFIED FOR PUBLICATION**

**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FOURTH APPELLATE DISTRICT**

**DIVISION TWO**

| | |
|---|---|
| CITY OF SAN CLEMENTE, | |
| Plaintiff and Respondent; | E077153 |
| THE RESERVE MAINTENANCE CORPORATION, | (Super.Ct.No. RIC1800232) |
| Plaintiff and Appellant. | OPINION |
| v. | |
| DEPARTMENT OF TRANSPORTATION et al., | |
| Defendants and Respondents; | |
| SIERRA CLUB et al., | |
| Real Parties in Interest and Appellants; | |

APPEAL from the Superior Court of Riverside County. Daniel A. Ottolia, Sharon J. Waters and Sunshine S. Sykes, Judges. Affirmed in part; reversed in part with directions.

Sheppard, Mullin, Richter & Hampton, Brian M. Daucher and Matthew G. Halgren for Plaintiff and Appellant.

Shute, Mihaly & Weinberger, William J. White, Edward T. Schexnayder and Caitlin F. Brown for Real Parties in Interest and Appellants.

No appearance for Plaintiff and Respondent.

Nossaman, Robert D. Thornton, Benjamin Z. Rubin, David J. Miller and Elizabeth Klebaner for Defendants and Respondents Foothill/Eastern Transportation Corridor Agency and the Board of Directors of the Foothill/Eastern Transportation Corridor Agency.

No appearance for Defendant and Respondent State of California Department of Transportation.

The Foothill/Eastern Transportation Corridor Agency (the Corridor Agency) is responsible for planning and constructing major thoroughfares in Orange County, including State Route 241. In 2006 and 2013, the Corridor Agency approved extensions of State Route 241, and the Environmental Parties[1] along with other environmental organizations and the California Attorney General filed lawsuits challenging those approvals. In 2016, after years of litigation, the Corridor Agency entered a settlement agreement to resolve the litigation. They agreed to recognize an "Avoidance Area" to protect environmentally and culturally sensitive resources in future planning and later

---

[1] The Environmental Parties are the Sierra Club, National Audubon Society, Defenders of Wildlife, and Natural Resources Defense Council.

entered a protective agreement with the California Department of Transportation (CalTrans) to implement the settlement.

The Corridor Agency continued its planning efforts and identified several alternatives for the transportation project. While these efforts were in progress, the Reserve Maintenance Corporation (the Reserve), a homeowner's association, filed a lawsuit seeking to protect the interest of their homeowners in avoiding an extension of State Route 241 near their community. The lawsuit challenged the settlement agreement on the ground that the creation of the Avoidance Area was beyond the authority of the Corridor Agency and arguing that maintaining the Avoidance Area was inconsistent with legislative directives.

In 2020, after three years of litigation, during which the Reserve lost a petition for a restraining order and motions for summary adjudication and faced the prospect of dispositive motions from the other side, they agreed to dismiss their lawsuit. However, they moved for attorney fees and costs on the ground they were successful parties in the litigation under Code of Civil Procedure section 1021.5 (section 1021.5). In March 2020, the Corridor Agency chose to proceed with a road construction alternative that steered clear of both the Avoidance Area and the Reserve Community, and the Reserve argued their litigation caused the agency to make that choice, meaning their litigation was successful as a catalyst of change. The Environmental Parties also moved for attorney fees under section 1021.5 on the ground they were successful parties because they gained

3

the dismissal, and both they and the Corridor Agency moved for costs as prevailing parties under Code of Civil Procedure section 1032 (section 1032).

The trial judge denied the request for attorney fees under section 1021.5 by both parties. She determined the Reserve was not entitled to attorney fees even assuming the litigation did cause the change in plans because they didn't achieve the change in the manner sought by the litigation—that is, by invalidating the provisions of the settlement relating to the Avoidance Area. She determined the Environmental Parties were not entitled to attorney fees because the Reserve had not done anything to compromise public rights except initiate the litigation. Since she concluded the litigation was the type of case section 1021.5 was meant to encourage, not discourage, she concluded the Reserve were not the type of party against which it was appropriate to award attorney fees under section 1021.5. The judge also determined the Environmental Parties and the Corridor Agency were prevailing parties under section 1032 and entitled to costs, though at amounts lower than the parties requested.

The Environmental Parties appealed, and the Reserve filed a cross-appeal. The Reserve argues the trial judge erred by failing to find they were successful parties because their litigation was the catalyst of the Corridor Agency's decision not to extend State Route 241 near their community. The Environmental Parties argue the trial judge erred in determining it wasn't appropriate to award attorney fees against the Reserve because their litigation, if successful, would have curtailed public rights. We conclude the trial judge did not abuse her discretion in concluding the catalyst theory didn't apply to

4

this case but erred as a matter of law by exempting the Reserve from an award of attorney fees under *In re Joshua S.* (2008) 42 Cal.4th 945 (*Joshua S.*) and *Save Our Heritage Organisation v. City of San Diego* (2017) 11 Cal.App.5th 154 (*Save Our Heritage*). We also conclude the trial judge did not abuse her discretion in awarding costs under section 1032 or by refusing to apportion costs.

We therefore reverse the order denying the Environmental Parties attorney fees and costs under section 1021.5 and remand for a hearing on other issues the trial judge did not reach in her ruling. Otherwise, we affirm.

**I**

**FACTS**

A. *The Disputed Plan to Extend State Route 241*

San Onofre State Beach lies in northern San Diego County on the border of Orange County, south of the city of San Clemente. The park serves over 2.4 million visitors a year, provides habitat for endangered and threatened species, and contains the ancestral Native American village of Panhe.

In the early 2000s, the Corridor Agency began environmental review of a new transportation initiative intended to relieve traffic congestion in south Orange County. Among the alternatives the Corridor Agency considered was extending the existing State Route 241 south to Interstate 5. Some of those routes ran through open space east of San Clemente. The Corridor Agency later also considered alternatives that would come near

5

the Reserve, a master planned residential development in San Clemente which contains 419 homes and more than 1200 residents.

In 2004, the Environmental Parties and other environmental organizations formed a coalition to mobilize opposition to the extension of Route 241, which became known as the Save San Onofre Coalition (SSOC).[2] In 2006, the Corridor Agency approved a plan called the "Green Alignment," which would run through San Onofre, the Donna O'Neill Land Conservancy, and other open space.

SSOC filed a lawsuit under the California Environmental Quality Act (CEQA, Pub. Resources Code, § 21000 et seq.) challenging the approval. The California Attorney General and the California State Park and Recreation Commission filed their own CEQA lawsuit. (See *California State Parks Foundation v. Superior Court* (2007) 150 Cal.App.4th 826, 831-832, 843.) The California Native American Heritage Commission sued under Public Resources Code sections 5097.94 and 5097.97, seeking to enjoin the construction to protect places of special religious or social significance to Native Americans.

A few years later, after setbacks that stalled the project as designed, the Corridor Agency proposed a project called the "Tesoro Extension," a shorter extension that did not reach the critical open space areas but followed the same general route as the Green Alignment. SSOC opposed the Tesoro Extension, arguing it amounted to improper

---

[2] SSOC ultimately included the 12 groups who signed the settlement agreement challenged in this litigation, all of them named by the Reserve as real parties in interest. Only the Environmental Parties are parties to this appeal.

segmentation of the Green Alignment project. In 2013, after the Corridor Agency approved the Tesoro Extension, SSOC again filed a CEQA lawsuit, and the Attorney General filed a parallel CEQA challenge. SSOC also objected to a bridge project it argued would enable the toll road extension project and therefore constituted improper segmentation. Orange County, who approved the bridge project, the Corridor Agency, and SSOC entered a tolling agreement to allow time for settlement discussions.

B. *The 2016 Settlement Agreement*

After years of litigation, on November 10, 2016, the Corridor Agency, the Environmental Parties, the Attorney General, the Native American Heritage Commission, and the California State Park and Recreation Commission reached a global settlement resolving the litigation and disputes relating to the plans approved by the Corridor Agency in 2006 and 2013.

The Corridor Agency agreed to rescind its approvals and CEQA certifications for the Green Alignment and the Tesoro Extension, and SSOC and the state parties agreed to dismiss their lawsuits. The agreement allowed the Corridor Agency to move forward with the Oso Bridge project and a new round of environmental review without implicating the improper segmentation concerns raised by SSOC.

However, the settlement agreement specified the new project would not be constructed within a defined "Avoidance Area" encompassing the undeveloped lands east of San Clemente, including the Donna O'Neill Land Conservancy, the sacred Native American sites, and San Onofre State Beach. Key provisions say the Corridor Agency

7

"shall not construct or provide funding for the construction of any road alignment that is located within, or that would have Direct Impacts to, the Avoidance Area" and "will only build or fund [a State Route 241] alignment that is located outside of the Avoidance Area, as defined in this Agreement." The Avoidance Area map shows the Avoidance Area covering several square miles and effectively foreclosing any potential State Route 241 alignment to the east and south of San Clemente or connecting to Interstate 5 south of San Clemente. The settlement agreement was incorporated into a stipulated judgment entered by the Superior Court of San Diego County (the toll road judgment), which retained jurisdiction to enforce the judgment.

The parties also agreed to seek a separate "Protective Agreement" with transportation and natural resource agencies barring these agencies from building major thoroughfares in the Avoidance Area. The Corridor Agency and SSOC later entered into a protective agreement with CalTrans and the California Natural Resources Agency, which provides CalTrans will refrain from thoroughfare development within the Avoidance Area, except as the Legislature may otherwise direct.

The settlement agreement preserves the Corridor Agency's discretion to continue planning, environmental review, and construction of the southern extension that don't enter the Avoidance Area. Section 3 of the agreement provides, "It is the Parties' intent to establish a framework for the evaluation of one or more Post-Settlement Alignments, and not bind [the Corridor Agency's] discretion to approve, disapprove or condition any Post-Settlement Alignment as may be required by the Environmental Review Process."

8

The settlement agreement also aimed for there to be legislation codifying the Avoidance Area by proposing that as a prerequisite for the Corridor Agency's moving forward with traffic improvement projects that would permit a direct connection between the existing terminus of State Route 241 and Los Patrones Parkway. In September 2020, the Governor signed Assembly Bill No. 1426 (2019-2020 Reg. Sess.), codifying the protections of the Avoidance Area.

C.  *The Corridor Agency's Continued Planning*

The Corridor Agency continued to pursue other solutions to traffic congestion in south Orange County. From 2015 through 2017, even before the settlement was finalized, the Corridor Agency received input on alternative plans. The process yielded a number of ideas for relieving congestion, only three of which included an extension of State Route 241. One idea, later known as "Alternative 22," was to extend an existing county road, Los Patrones Parkway, to La Pata in San Clemente.

In December 2017, the Corridor Agency released a report recommending further evaluation of several ideas for relieving congestion. These ideas included adding general purpose or high-occupancy toll lanes to Interstate 5, connecting arterials with State Route 73, connecting State Route 241 to State Route 73, and three extensions of State Route 241, which were designated as Ideas 13, 14, and 17. According to the Reserve, Ideas 13 and 14 would cut through existing communities in San Clemente, San Juan Capistrano, or Mission Viejo. The Corridor Agency said Ideas 13, 14, and 17 would be put through additional traffic study to assess how they satisfied the project purpose and how they

9

would affect the environment. In February 2018, the Corridor Agency announced an additional solution—the extension of Los Patrones Parkway to La Pata—would be studied further.

The Corridor Agency submitted a draft project study report to CalTrans which identified nine ideas for mitigating traffic congestion, including a "no build" option. Alternative 22 was only a concept then, so it wasn't included in the report. Five of the plans proposed improvements that did not extend the State Route 241. The report included Ideas 13, 14, and 17, which did propose extending State Route 241 south of San Clemente. In November 2019, CalTrans and the Corridor Agency distributed an extensive preliminary scoping report, which described the criteria that would be applied to further narrow the range of alternatives for detailed environmental study.

In March 2020, CalTrans and the Corridor Agency issued a report comparing the alternative plans. They found Alternative 22 performed best because it met the project's purposes, was cost effective, had low public opposition, and relatively few potential conflicts involving rights-of-way, other land uses, critical habitats, known cultural resources, known hazardous waste sites, or environmental justice communities.

The report concluded Alternative 22 would provide nearly twice the reduction in traffic delay compared to Idea 14—which would be in the vicinity of the Reserve community—at a significantly lower cost. The report also concluded Idea 14 would involve significantly more problems with land use, right-of-way, environmental justice communities, and had lower public support than Alternative 22.

10

In March 2020, the Corridor Agency staff recommended the Board adopt the report findings and the recommendation to advance a no build alternative and Alternative 22 for further environmental study. On March 12, 2020, the Corridor Agency Board voted to adopt Alternative 22 and conclude the environmental review process on alternative routes, including Idea 14. The Corridor Agency directed staff to collaborate with Orange County to advance Alternative 22 as a county major thoroughfare and return to the board in 120 days with a project development plan.

About a month earlier, Senate Bill No. 1373 was introduced, which would have prohibited the Corridor Agency from constructing, funding, or operating any new major thoroughfare in an area designated an open space or subject to a conservation easement. A subsequent amendment to the legislation would have terminated State Route 241 north of San Clemente. At a June meeting, the Corridor Agency took up whether to support or oppose the amended bill. San Clemente's representative on the board said the amended bill was intended to codify the agency's March decision to adopt Alternative 22. However, other board members contended they had voted only to further evaluate the alternative and opposed limiting the Corridor Agency's discretion to extend State Route 241 at that time or in the future. The board voted 12 to 1 to oppose Senate Bill No. 1373.

D. *The Reserve's Lawsuit*

In July 2017, about seven months after the settlement establishing the Avoidance Area, the Reserve sent a letter to the Corridor Agency, demanding they declare the settlement agreement and protective agreement null and void and cease further actions

11

under them. The Reserve's attorney said he "knew this demand letter was essentially futile," and indeed the Corridor Agency rejected the demand. On July 28, 2017, the Reserve filed a lawsuit seeking to set aside the settlement and protective agreements. In March 2018, they filed the operative first amended petition and complaint.

The Reserve's first amended complaint contained seven causes of action, six of which sought a writ of mandate invalidating the settlement agreement and protective agreement. Their position was the agreements' protection of the Avoidance Area was beyond the agency's authority. They also sought a declaration that under the Streets and Highways Code the only permissible route for State Route 241 was an eastern alignment bypassing San Clemente, which would inevitably run through the Avoidance Area.

On appeal, the Reserve say their primary goal in bringing the litigation was to avoid an extension of State Route 241 near the Reserve community or through other existing communities in San Clemente, San Juan Capistrano, and Mission Viejo. However, their first amended complaint sought relief in the form of a writ of mandate and an injunction directing the Corridor Agency and CalTrans to set aside the settlement agreement and protective agreement. Consistent with these prayers for relief, their engagement agreement for legal services defines prevailing in the litigation to mean "(1) the court invalidates Settlement Agreement paragraph 3.1 (either in whole or in part); (2) the court invalidates paragraphs 1 or 2 of the Protective Agreement; (3) the court otherwise finds the Association is the prevailing party on any cause of action for the purpose of bringing an attorneys' fees motion; (4) the parties to the TCA settlement

12

Agreement and Protective Agreement voluntarily rescind the same after the filing of the Litigation; or (5) the Litigation is resolved via settlement which accomplishes any of (1), (2), or (4) above."

In August 2017, the parties attended a CEQA Settlement Conference, as mandated by Section 21167.8 of the Public Resources Code. However, they were unable to reach a settlement. According to counsel of record for the Reserve, the Reserve attempted to settle the dispute on multiple occasions over two years. He said in October or November 2018, the parties appeared to reach an agreement, but the Corridor Agency's board of directors rejected the proposed agreement on the ground San Clemente was not a party.

The Reserve's lawsuit failed to invalidate the agreements. In April 2018, they filed an ex parte application for an order enjoining the Corridor Agency and CalTrans from studying, funding, constructing, or otherwise advancing any project to extend the State Route 241 in a manner inconsistent with their interpretation of Streets and Highways Code section 541. The trial judge, Riverside County Superior Court Judge Daniel A. Ottolia, denied the application.

In May and July 2019, the Reserve filed a motion for summary adjudication on their declaratory relief claim and a separate motion for judgment on their writ claims. The Reserve argued State Route 241 was required by statute to connect to Interstate 5 south of San Clemente, but "a route connecting to Interstate 5 *south of San Clemente* is expressly prohibited by the Settlement and Protective Agreements executed by the [Corridor Agency] and CalTrans." In their motion for judgment, they argued the Avoidance Area

provisions of the agreements improperly constrained the Corridor Agency's authority to build in the Avoidance Area.

The trial judge denied both motions. At one hearing, he issued a tentative ruling that the Streets and Highways Code section 541 claims were not ripe. "Petitioners' claims and concerns are based upon a future event which may occur. The final determination as to the manner and location of the extension is years away. CalTrans recently signed the Corridor Agency's project study report in May of this year which allows the agency to proceed to the environmental study process, CEQA and NEPA, for the nine alignment alternative ideas. One of those is a no-build alternative. Only three of the ideas would include an extension of SR-241. One would extend the Ortega Highway to provide a connection to the SR-241, and five of the eight build ideas would not include an extension of the SR-241. [¶] No environmental studies have been conducted regarding these nine alternates. The possibilities are extensive and unknown. . . . [¶] In addition, there has been no approval made in this case and at this point, there are at least nine future possibilities. There are various administrative policies and procedures which govern the progression of these projects. There are also statutory obligations which must be satisfied such as CEQA. This motion asks the Court to step in and interrupt those procedures, based on petitioners' concerns about which alternative might be approved in the future. There is that possibility that section 541 will not apply at all in the end. Therefore, the Court finds that the declaratory relief claims are not ripe." However, after

14

hearing argument, the judge continued the hearing to allow further development of the issues.

At a later hearing, the judge concluded the settlement agreement and the protective agreement were valid because they didn't impermissibly restrict the Corridor Agency's future authority. The judge also concluded "petitioners have failed to demonstrate as a matter of law that the agreements disavow and rescind the legislatively designated route for SR-241. . . . There's no requirement or language in the statute that the road bypass San Clemente or that it intersect the I-5 south of San Clemente. . . . To the extent that the protective agreement allows for consideration of construction that lies outside the avoidance area, it is not, as a matter of law, inconsistent with section 541." On January 28, 2020, the judge adopted and signed two detailed orders that incorporated the statements from his oral rulings.

On June 11, 2020, the judge issued an order clarifying and amending his prior orders. He ruled the prior orders were "not final determinations as to the ultimate merits of the legal issues or causes of action at issue," but that the Reserve had not carried their burden to show "as a matter of law that provision 3.1.2 of the settlement agreement renders it *ultra vires* or void in whole or in part," or that "the protective agreement illegally restricts the present and future exercise of Caltrans and [the Corridor Agency's] discretionary governmental authority."

On June 24, 2020, the Corridor Agency sought leave to file dispositive motions against the Reserve's claims. The following month, the Reserve stipulated to the dismissal of their lawsuit. On September 21, 2020, a newly assigned trial judge, Riverside County Superior Court Judge Sharon J. Waters, dismissed the Reserve's action.

E.  *Attorney Fees and Costs*

1.  *The motions for attorney fees under section 1021.5*

After the dismissal, the Environmental Parties and the Reserve filed motions to recover their attorney fees under section 1021.5. The Environmental Parties argued they were successful parties and met the section 1021.5 factors allowing an award of attorney fees because they had defeated the Reserve's motions to invalidate the agreements and the Reserve dismissed their case. They argued their participation was necessary and they had succeeded in securing the rights they had vindicated in the settlement and protective agreements and toll road judgment. The Environmental Parties sought $1,139,210.79 under section 1021.5 against the Reserve.

The Reserve argued *they* were entitled to attorney fees against the Corridor Agency under section 1021.5, despite having dismissed their complaint. They argued they were a successful party because the Corridor Agency "vote[d] to abandon their plan to extend SR-241 altogether, including specifically Alternative 14 passing by the [Reserve] property" as a result of the Reserve's litigation. The Reserve's motion sought $1,847,526.25 against the Corridor Agency.

16

Both the Environmental Parties and the Corridor Agency moved to recover their costs from the Reserve as prevailing parties under section 1032. The Environmental Parties sought $9,829.13 and the Corridor Agency sought $179,716.15.

2. *The trial judge's rulings on attorney fees and costs*

On February 26, 2021, the trial judge issued brief, written tentative rulings denying both motions for attorney fees but awarding costs to the Environmental Parties and the Corridor Agency.

The tentative ruling rejected the Reserve's motion for attorney fees on the grounds the Reserve hadn't sought prelitigation settlement, the evidence that the litigation caused the change was divided and, in any event, the litigation didn't cause a change in the manner the Reserve sought. "[T]he California Supreme Court [has] reaffirmed a party's right to recover attorney fees under the catalyst theory, holding that plaintiffs are considered 'successful' or 'prevailing parties' 'if the defendant changes its behavior substantially because of, and in the manner sought by, the litigation,' even if the lawsuit terminates without any judicial resolution of the merits. [Citation.] While there admittedly is evidence that suggests that the Reserve's lawsuit caused [the Corridor Agency] to abandon efforts to extend SR-241, there is also evidence presented by [the Corridor Agency] that shows there was a lack of causation between the Reserve's lawsuit and the decision to abandon efforts to extend SR-241. Even assuming, however, that the Court were to conclude the Reserve's lawsuit caused [the Corridor Agency] to change its behavior, the Reserve's lawsuit did not cause a change 'in the manner sought by the

17

litigation.' 'The manner sought by the litigation' here was to set aside the Settlement Agreement and the Protective Agreement and to require the extension to pass through the Avoidance Area. None of that was . . . accomplished. Additionally, to be entitled to an award of fees, the Reserve was also required to demonstrate that it made a reasonable attempt to settle the dispute before filing the lawsuit. The July 6, 2017 cease and desist letter raising only a Brown Act violation does not satisfy that criterion. The motion is denied."

On the Environmental Parties' motion for attorney fees, the judge wrote she was "not convinced that the defense mounted by the Environmental Parties was necessary and does not accept their assumption that [the Corridor Agency] would not have vigorously defended the Settlement Agreement and Protective Agreement." She also wrote, "Even if a party meets the criteria for an award of attorney fees under CCP section 1021.5, the court may deny fees as against a litigant 'who did nothing to adversely affect the public interest.'" (Citing *Save Our Heritage*, *supra*, 11 Cal.App.5th at pp. 160-161.) She held "the Environmental Parties have not established that the Reserve did anything to adversely affect the public interest such that the Court should exercise its discretion and award fees as against this party" and declined to award them attorney fees against the Reserve.

The parties requested oral argument and the judge held a hearing on March 25, 2021. On March 30, 2021, after argument, the judge issued a final written ruling which largely adopted the tentative ruling on the Reserve's motion for attorney fees. However,

18

in denying the Reserve's motion, the judge omitted the portion of the tentative ruling which found the Reserve hadn't engaged in a reasonable attempt to settle before filing the lawsuit.

On the Environmental Parties' motion, the judge concluded an award of attorney fees against the Reserve was not appropriate, following *Save Our Heritage*, *supra*, 11 Cal.App.5th at pp. 160-161, because the Reserve were a party engaged in public interest litigation who had neither done nor failed to do something that compromised public rights. She held "the need to consider this factor is perhaps most important in public interest litigation so as to ensure that section 1021.5's intent to encourage public interest litigation is not undermined." She held that "'[t]he relevant inquiry in cases where a defendant or real party in interest prevails in defending against litigation and seeks attorney fees from the party who initiated the litigation is whether the litigation was detrimental to the public interest because it sought to curtail or compromise important public rights'. . . . Here the Reserve sought to correct what it perceived were [the Corridor Agency's] violations of law, including alleged violations under CEQA, that provided grounds for setting aside the Settlement Agreement and Protective Agreement." The judge concluded the Reserve had not "sought to curtail or compromise important public rights by initiating this action and therefore declines to award attorney fees to the Environmental Parties."

The judge also noted that receiving "an award of fees under Section 1021.5 requires a showing that a significant benefit has been conferred on the general public or a

large class of persons, the necessity and financial burden of private enforcement makes an award appropriate and the fees should not in the interest of justice be paid out of the recovery, if any." She noted that "[w]here a private party co-litigates with a public entity, particular attention is required to the showing of necessity . . . the private party requesting attorney fees must make a significant showing that its participation was material to the result, i.e., that it proffered significant factual and legal theories, and produced substantial, material evidence, that were not merely duplicative of or cumulative to what was advanced by the governmental agency." However, the judge did not ultimately make a finding as to the necessity of the Environmental Parties' participation in the litigation.

The judge granted the Environmental Parties' motion for costs under section 1032. She concluded that "the Reserve is not the prevailing party" and that, as a result, "respondent and real parties are entitled to costs as a matter of right." However, she excluded some of the costs both the Environmental Parties and the Corridor Agency sought to recover on various grounds. She awarded the Environmental Parties $7,769 and the Corridor Agency $94,062.50.

The Environmental Parties timely appealed and the Reserve timely cross-appealed.

## II

## ANALYSIS

A. *The Reserve's Motion for Attorney Fees*

The Reserve argues they met the criteria for receiving an attorney fee award as a successful party under section 1021.5, and the trial judge erred when she determined the

20

litigation didn't warrant awarding attorney fees as the catalyst of the Corridor Agency's decision to abandon building an extension of State Route 241 near the Reserve community.

Section 1021.5 allows a prevailing party to recover its attorney fees in a case that enforces an important public right. This is an exception to the general rule that parties in litigation pay their own attorney fees. (*Robinson v. City of Chowchilla* (2011) 202 Cal.App.4th 382, 390.) The policy encourages lawsuits which effect "strong [public] policy by awarding substantial attorney's fees . . . to those who successfully bring such suits and thereby bring about benefits to a broad class of citizens." (*Woodland Hills Residents Assn., Inc. v. City Council* (1979) 23 Cal.3d 917, 933.) "The doctrine rests upon the recognition that privately initiated lawsuits are often essential to the effectuation of the fundamental public policies embodied in constitutional or statutory provisions, and that, without some mechanism authorizing the award of attorney fees, private actions to enforce such important public policies will as a practical matter frequently be infeasible." (*Ibid*.)

To recover attorney fees, the party seeking them must establish (1) they are a successful party in an action, (2) which "has resulted in the enforcement of an important right affecting the public interest," (3) conferred a significant benefit on the general public or a large class of persons, and (4) an award of attorney fees is appropriate due to the necessity and financial burden of private enforcement, or of enforcement by one public entity against another public entity. (Code Civ. Proc., § 1021.5; *La Mirada Avenue*

21

*Neighborhood Assn. of Hollywood v. City of Los Angeles* (2018) 22 Cal.App.5th 1149, 1156 (*La Mirada*).)

In this case, the dispute concerns the first requirement—whether the Reserve were a successful party—because they dismissed their lawsuit without obtaining the relief their claims sought. That fact isn't decisive, because a party can establish they are a "successful party" even where there is no final judicial resolution in their favor. (*Graham v. DaimlerChrysler Corp.* (2004) 34 Cal.4th 553, 560.) Under section 1021.5, a "successful party is the party to litigation that achieves its objectives. . . . This definition is both 'pragmatic' and 'broad.' To be the successful party, a party need not obtain final judgment in its favor. It need not succeed on all of its claims. And it need not personally benefit from its success. Indeed, because the critical fact to success is the impact of the action, not the manner of its resolution, the party need not 'win' the lawsuit at all: It is enough to show that the lawsuit was a 'catalyst' that motivated the defendant to alter its behavior, be it through voluntary action growing out of a settlement or otherwise." (*La Mirada*, *supra*, 22 Cal.App.5th at p. 1157 [cleaned up].)

That is the Reserve's theory of the case—that their lawsuit was the catalyst which caused the Corridor Agency to abandon plans to extend State Route 241 near their community—but the trial judge held they didn't meet the standard. A party seeking fees under the catalyst theory cannot show they are "a successful party by obtaining just any relief." (*Department of Water Resources Environmental Impact Cases* (2022) 79 Cal.App.5th 556, 572.) As our Supreme Court explained, "attorney fees may be awarded

even when litigation does not result in a judicial resolution if the defendant changes its behavior *substantially because of*, and *in the manner sought by*, the litigation." (*Graham v. DaimlerChrysler Corp.*, *supra*, 34 Cal.4th at pp. 560-561, italics added.) In addition, "the lawsuit must have some merit . . . and the plaintiff must have engaged in a reasonable attempt to settle its dispute with the defendant prior to litigation." (*Ibid*.)

"When a plaintiff seeks fees under a catalyst theory," to determine whether the other party changed their behavior substantially because of, and in the manner sought by the litigation, "courts generally must conduct the following inquiry: (1) identify the plaintiff's primary litigation objectives, (2) compare the results obtained to determine whether the plaintiff in fact achieved those objectives, and, if so, (3) decide whether the lawsuit was a material factor or contributed in a significant way to those results." (*Department of Water Resources Environmental Impact Cases*, *supra*, 79 Cal.App.5th at p. 572.)

Here, the trial judge determined the Reserve were not a successful party entitled to attorney fees because they didn't show the Corridor Agency changed their behavior substantially because of, and in the manner sought by, the litigation. "We review a trial court's determination of whether a litigant is a prevailing party for abuse of discretion. We accept the trial court's resolution of credibility and conflicting substantial evidence, and its choice of reasonable inferences that can be drawn from the evidence. However, a trial court abuses its discretion when factual findings critical to its decision are not

23

supported by substantial evidence." (*Sukumar v. City of San Diego* (2017) 14 Cal.App.5th 451, 464 [cleaned up].)

We conclude the trial judge's findings were supported by substantial evidence and will therefore affirm. As for the judge's determination the litigation was not a substantial factor in bringing about the Corridor Agency's decision not to extend State Route 241 near the Reserve, that conclusion is supported by a wealth of evidence. It's true, as the Reserve argues, the decision not to extend the road occurred while the litigation was still pending, and the temporal coincidence can raise an inference of causation. (*Hogar Dulce Hogar v. Community Development Com. of City of Escondido* (2007) 157 Cal.App.4th 1358, 1366 ["When, after litigation is initiated, a defendant has voluntarily provided the relief a plaintiff is seeking, the chronology of events may raise an inference that the litigation was the catalyst for the relief"].) However, it's also true the other side may "rebut[] the presumption by showing that the . . . filing of the suit had no impact upon its action." (*Californians for Responsible Toxics Management v. Kizer* (1989) 211 Cal.App.3d 961, 968.)

Here, the Corridor Agency provided significant evidence concerning its deliberations, and that evidence provided the trial judge with a reasonable basis for finding that—timeline notwithstanding—the Corridor Agency was moved by other factors. Setting aside their years' worth of deliberations about the alternative projects, in March 2020, the Corridor Agency and CalTrans issued a report concluding Alternative 22 performed best among the options. Crucially, the report found Alternative 22 would

provide nearly twice the reduction in traffic delay compared to building a route in the vicinity of the Reserve community and would do so at a significantly lower cost. The Corridor Agency Board voted to adopt Alternative 22 and end the environmental review process on alternative routes, including Idea 14, the route near the Reserve. The trial court concluded this evidence supported finding the litigation was not a substantial factor in the Corridor Agency deciding against extending State Route 241, and that conclusion was reasonable. It's also relevant that the Corridor Agency at the same time opposed legislation that would have stopped any project to extend State Route 241 south of San Clemente because they didn't wish to bind their discretion to extend State Route 241 in the future. Thus, the evidence supported finding that extending State Route 241 remained an option for the Corridor Agency, and the agency had not abandoned it due to the litigation.

The trial judge also concluded the Reserve's primary litigation objective was invalidating the settlement's Avoidance Area, not stopping a specific extension of State Route 241, as the Reserve claimed. Based on that finding too, she concluded the Reserve was not a successful party because they didn't obtain the result they wanted in the manner sought by the litigation. This finding was also supported by substantial evidence and therefore reasonable. To start, the Reserve's seven causes of action all focused on the goal of invalidating the settlement and its designation of an Avoidance Area. Six of the causes of action sought a writ of mandate invalidating the settlement agreement and the protective agreement on the ground that protecting the Avoidance Area was beyond the

25

agency's legal power. They also sought a declaration that the only permissible route for State Route 241 was an eastern alignment bypassing San Clemente, which would inevitably run through the Avoidance Area. In addition, their engagement agreement for legal services says their purpose was to invalidate the Avoidance Area limitation of the settlement agreement and the protective agreement or to cause the Corridor Agency and the settling parties to voluntarily rescind the agreements. The trial judge could reasonably conclude that invalidating the settlement and defeating the Avoidance Area designation were the primary relief the Reserve sought. "In cases where judicial relief was obtained, it is sufficient if the plaintiff achieved partial success or . . . *some* of the benefit the plaintiff sought. . . . However, in catalyst cases, the defendant must have provided the plaintiff with the *primary* relief sought." (*Marine Forests Society v. California Coastal Com.* (2008) 160 Cal.App.4th 867, 878.) Since the Reserve did not obtain that relief, we conclude the trial judge's refusal to award them attorney fees was well supported.

B. *The Decision to Award Costs Against the Reserve*

The Reserve argues the trial judge erred by awarding costs to the Corridor Agency and the Environmental Parties under section 1032. They argue the Reserve were the prevailing party under the catalyst theory and also the trial judge's decision on costs must be reversed because she failed to exercise discretion in rendering the award, applied the wrong legal standard, and failed to apportion costs.

In ruling on costs, the trial judge must determine who is the prevailing party. (*Heather Farms Homeowners Assn. v. Robinson* (1994) 21 Cal.App.4th 1568, 1572.) We review the trial judge's decision for abuse of discretion. (*Ibid.*)

"[A] prevailing party is entitled as a matter of right to recover costs in any action or proceeding," except as otherwise expressly provided by statute. (Code Civ. Proc., § 1032, subd. (b).) The statute provides that "unless the context clearly requires otherwise," the term "prevailing party" includes "the party with a net monetary recovery, *a defendant in whose favor a dismissal is entered*, a defendant where neither plaintiff nor defendant obtains any relief, and a defendant as against those plaintiffs who do not recover any relief against that defendant." (Code Civ. Proc., § 1032, subd. (a)(4), italics added; *DeSaulles v. Community Hospital of Monterey Peninsula* (2016) 62 Cal.4th 1140, 1147-1148.) The Corridor Agency and the Environmental Parties were defendants in whose favor dismissal was entered, so are presumptively entitled to costs.

However, the Reserve argue "the context clearly requires" an exception. They argued a defendant who benefited from a dismissal may not be entitled to costs "where a lawsuit . . . 'was the catalyst motivating the defendants to modify their behavior or the plaintiff achieved the primary relief sought.'" (*Mundy v. Neal* (2010) 186 Cal.App.4th 256, 259.) In other words, they argue they—not the beneficiaries of the dismissal— should be regarded as the prevailing party because the litigation caused the parties who seemed to prevail to comply voluntarily. However, we've already concluded the trial judge was reasonable in concluding the Reserve's litigation was *not* the catalyzing agent

27

they suggest. We therefore reject the Reserve's argument the context requires ruling the beneficiaries of the dismissal did not prevail.

The Reserve complain the trial judge improperly jumps from her conclusion they were *not* prevailing parties to the conclusion the Corridor Agency and the Environmental Parties *were* prevailing parties. The judge said she awarded costs "because the court has concluded that the Reserve is not the prevailing party, respondent and real parties are entitled to costs as a matter of right." The Reserve correctly observe there may not always be a prevailing party and even if they were not a prevailing party, it doesn't follow that "some other party must be entitled to costs 'as a matter of right.'"

We think this argument misses the point of the trial judge's ruling. Section 1032, subdivision (b) says a prevailing party is entitled to costs as a matter of right, and subdivision (a) defines "prevailing party" as, among other things, "a defendant in whose favor a dismissal is entered." There may be an exception where context requires, and the Reserve relied on the catalyst theory to establish context required finding they weren't prevailing parties. Having concluded the Reserve's litigation was *not* the catalyst of the Corridor Agency's change in plans, it follows that the exception did *not* apply, and the Corridor Agency and the Environmental Parties were prevailing parties because they were defendants in whose favor a dismissal had been entered. Under section 1032, subdivision (b), they were therefore prevailing parties entitled to costs as a matter of right, as the trial judge concluded.

28

The Reserve argue the trial judge incorrectly relied on section 1021.5 to find the Corridor Agency was entitled to costs for purposes of section 1032. However, we must uphold the trial judge's decision if it's correct under any theory of law applicable to the case. (*People v. Geier* (2007) 41 Cal.4th 555, 582.) Because the Corridor Agency is the prevailing party under section 1032, subdivision (a)(4), we affirm regardless what "considerations . . . may have moved the trial court to its conclusion." (*Geir*, at p. 582.)

C. *The Decision Not to Apportion Costs*

The Reserve argue the trial judge abused her discretion by awarding the Corridor Agency $94,062.50 in costs without apportioning the amount among the parties. Section 1033.5, subdivision (c) allows fees "reasonably necessary to the conduct of the litigation, rather than merely convenient or beneficial to its preparation" and specifies costs should be "reasonable in amount." Of course, what is reasonable depends on the nature of the litigation. Here, as the Corridor Agency points out, the Reserve challenged the settlement agreement and protective agreement under several theories, including under CEQA. The Corridor Agency prepared the record to defend against that challenge.

At bottom, this was a discretionary call for the trial judge. (*Perko's Enterprises, Inc. v. RRNS Enterprises* (1992) 4 Cal.App.4th 238, 245.) This litigation was sufficiently complex to justify these costs. (See *St. Vincent's School for Boys, Catholic Charities CYO v. City of San Rafael* (2008) 161 Cal.App.4th 989, 1019.) We conclude the trial judge did not abuse her discretion in making the award and refusing to apportion the costs among the parties.

D. *The Environmental Parties' Motion for Attorney Fees and Costs*

The Environmental Parties argue they were entitled to attorney fees and costs under section 1021.5 as successful parties in this litigation whose participation was necessary to obtaining enforcement of an important right affecting the public interest which conferred a benefit to the public. They argue the trial judge denied their motion for attorney fees because she "misapplied [an] exception [to awarding section 1021.5 fees], which the Supreme Court crafted for special cases where purely private disputes raise issues of public concern—circumstances not present here."

The California Supreme Court created the exception at issue in *Joshua S.* and revisited its application a few years later in *Serrano v. Stefan Merli Plastering Co., Inc.*, (2011) 52 Cal.4th 1018 (*Serrano*). As the Court explained in *Serrano*, "Section 1021.5 authorizes an award of fees when (1) the action has resulted in the enforcement of an important right affecting the public interest, (2) a significant benefit, whether pecuniary or nonpecuniary, has been conferred on the general public or a large class of persons . . ., and (3) the necessity and financial burden of private enforcement . . . are such as to make the award appropriate. In *Joshua S.*, we carved out a limited exception to these qualifications: 'Even when an important right has been vindicated and a substantial public benefit conferred, and when a plaintiff's litigation has transcended her personal interest, . . . section 1021.5 was not intended to impose fees on an individual seeking a judgment that determines only his or her private rights, but who has done nothing to adversely affect the public interest other than being on the losing side of an important

30

appellate case.'" (*Serrano*, at p. 1026 [cleaned up], quoting *Joshua S.*, *supra*, 42 Cal.4th at p. 958.) Even if a party qualifies under the three factors set out in section 1021.5, the court need not make an award where "the party from whom fees are sought 'is not the type of party on whom private attorney general fees were intended to be imposed.'" (*Serrano*, at p. 1027, quoting *Joshua S.*, at p. 953.)

"On appeal from an award of attorney fees under section 1021.5, the normal standard of review is abuse of discretion. However, de novo review of such a trial court order is warranted where the determination of whether the criteria for an award of attorney fees and costs in this context have been satisfied amounts to statutory construction and a question of law. Resolution of this case turns primarily on interpretations of section 1021.5 and the *Joshua S. . . .* opinion[], which present questions of law." (*Serrano*, *supra*, 52 Cal.4th at pp. 1025-1026 [cleaned up].)

The *Joshua S.* exception is narrow. At issue in that case was the adoptive status of a child shared by two women in a committed relationship before it was legal for them to be married. One of the women gave birth to two children using artificial insemination. She retained her parental rights while consenting to her partner's adoption of the children. After the women separated, the nonbiological mother filed a motion for an order of adoption, and the biological mother asked to be permitted to withdraw her consent to the adoption on the ground that "second parent adoption" was unlawful. Ultimately, the California Supreme Court upheld second parent adoption—an important precedent—and the nonbiological mother asked for attorney fees under section 1021.5. The Supreme

31

Court concluded "even when an important right has been vindicated and a substantial public benefit conferred, and when a plaintiff's litigation has transcended her personal interest, we conclude that section 1021.5 was not intended to impose fees on an individual seeking a judgment that determines only his or her private rights, but who has done nothing to adversely affect the public interest other than being on the losing side of an important appellate case." (*Joshua S.*, *supra*, 42 Cal.4th at p. 958.)

That is plainly not the circumstance presented by this case. Here the Environmental Parties had litigated for years to protect a variety of public interests in land against incursions proposed by the Corridor Agency. In short, and oversimplifying, the Environmental Parties represented the public interest in preserving certain undeveloped land, and they succeeded when they negotiated a settlement agreement which required the Corridor Agency to recognize the Avoidance Area as off limits for purposes of planning road construction projects. The Reserve's lawsuit targeted the legitimacy of the settlement agreement, a subsequent agreement to implement its terms, and the authority of the Corridor Agency to enter the agreements or treat the Avoidance Area as off limits. By doing so, the Reserve took action to compromise the same public interests and rights the Environmental Parties had sought to protect. Thus, the Reserve did not "simply raise[] an issue in the course of . . . litigation that gave rise to important appellate precedent decided adversely to [them]." (*Joshua S.*, *supra*, 42 Cal.4th at p. 957.) They initiated litigation aimed at curtailing government power to enter land use agreements as well as at unwinding agreements the agency already had entered.

It's true that the Reserve's actions that compromised public rights were limited to the litigation itself. That is to say, the litigation didn't arise out of extrajudicial conduct by the Reserve that compromised public rights; it was bringing the legal claims that constituted conduct compromising public rights. But that doesn't excuse them under the *Joshua S.* exception. As the *Joshua S.* court itself observed, "This is not to say that a party cannot be held liable for section 1021.5 attorney fees for engaging in litigation. When a party initiates litigation that is determined to be detrimental to the public interest, attorney fees have been imposed." (*Joshua S.*, *supra*, 42 Cal.4th at p. 957.)

As the Supreme Court noted with approval, in *Wal-Mart Real Estate Business Trust v. City Council of San Marcos* (2005) 132 Cal.App.4th 614, "Wal-Mart attacked on technical grounds a referendum that was to decide whether it could locate within the city, and the city was awarded attorney fees after it prevailed in the litigation. Wal-Mart thus sought a *judgment* that would adversely affect the public interest by preventing the city's electorate from exercising its power of referendum." (*Joshua S.*, *supra*, 42 Cal.4th at p. 958.) The facts of this case are closely analogous. The Reserve, a homeowner's organization seeking to protect its members' interests as property owners, attacked a settlement agreement entered by the Corridor Agency on the grounds the agreement was beyond its legal authority or conflicted with statutory directives. The Reserve thus sought a judgment that would adversely affect the public interest in the land use compromise reached by the Environmental Parties and the Corridor Agency by preventing the agency from exercising their power to give force to the agreement. We see nothing to distinguish

33

this case from *Wal-Mart*, and nothing in the principles enunciated in *Joshua S.* to warrant excepting the Reserve from the general rules that apply when a party otherwise qualifies for an award of attorney fees under section 1021.5.

The Reserve focus on what they claim was their *goal* in bringing the litigation to invalidate the settlement agreement—namely avoiding placement of a highway extension near their community. This, they argue, shows they did not *seek* "to adversely impact public rights," but only "to avoid the construction of a toll road that had been placed based on decisions that failed to comply with the law." To the same point, they argue they "did not dispute any underlying public rights on which the [settlement and protective] agreements were purportedly based." These points are irrelevant to the question whether the Reserve's litigation qualifies as conduct that adversely impacts important public rights and interests. As the use of the verb "impacts" suggests, the question is what *effect* the conduct would have had if successful, not what the actor's ultimate *goal* was. Any action can be redescribed to appear innocent, but in the context of determining whether to award attorney fees under section 1021.5, it's not enough to object that "the Petition targeted the agreements themselves because of their procedural defects." Acting to curtail the agency's authority to make land use decisions is conduct that would negatively affect public interests and rights, whatever the Reserve's ultimate purpose.

The trial judge appears to have fallen for this misdirection. Her ruling focused not on the effect of the litigation, but the Reserve's goal. "The relevant inquiry in cases

34

where a defendant or real party in interest prevails in defending against litigation and seeks attorney fees from the party who initiated the litigation is whether the litigation was detrimental to the public interest *because it sought to curtail or compromise important public rights*. . . . Here the Reserve *sought to correct what it perceived were [the Corridor Agency's] violations of law*, including alleged violations under CEQA, that provided grounds for setting aside the Settlement Agreement and Protective Agreement." (Italics added.) This is a mistaken application of section 1021.5 and the principles articulated in *Joshua S.*

The Second District rejected this same argument in *Pasadena Police Officers Assn. v. City of Pasadena* (2018) 22 Cal.App.5th 147, 164 (*Pasadena*). In that case, the Los Angeles Times intervened in a case in which records requesters filed a Public Records Act (PRA) request with the city of Pasadena seeking disclosure of a report about an officer-involved shooting of an unarmed teenager. The police officers and their union opposed disclosure by bringing a reverse-PRA action seeking to enjoin disclosure. They argued the report was a confidential personnel record exempt from disclosure under the *Pitchess* statutes, among other reasons. (Pen. Code, §§ 832.5, 832.7, 832.8; see *Pitchess v. Superior* Court (1974) 11 Cal.3d 531.) After significant litigation, including a writ petition to the Court of Appeal, the Times succeeded in obtaining disclosure of large portions of the report and filed a motion for attorney fees and costs, including a request against the city and the police union under section 1021.5. The trial judge denied the motion on the ground the officers "were private litigants who sought to protect their

35

privacy rights under the *Pitchess* statutes from disclosure of information in their personnel file . . . [and] their union . . . was acting in a representative capacity and not on its own behalf." (*Pasadena*, *supra*, 22 Cal.App.5th at pp. 157-158.)

The Court of Appeal held this was error. They noted that "[i]nstead of examining the Times' purpose in bringing the lawsuit, which plainly served the public interest, the trial court credited the motivations of the individual officers in opposing disclosure." (*Pasadena*, *supra*, 22 Cal.App.5th at p. 164.) However, "the subjective intent of the party seeking to prevent disclosure is immaterial. Although such a party must have 'done something to compromise the rights of the public' before having to pay attorney fees under section 1021.5, our Supreme Court refused to impose a 'bad faith' requirement. . . . Regardless of the officers' personal motivation in filing a reverse-PRA suit, in so doing, the officers and the PPOA plainly attempted to restrict the public's right of access to police records." (*Ibid.*)

The same is true in this case. Regardless that the Reserve, acting as the representative of its member homeowners, were motivated to bring their lawsuit by a desire to avoid having State Route 241 extended near their community, by bringing a lawsuit to invalidate the protection of the Avoidance Area in the settlement agreement and protective agreement, they plainly attempted to restrict the Corridor Agency's authority to settle the land use dispute as well as to invalidate the protections the agreements attempted to implement. Indeed, their legal theories, if they had been substantiated, could have had far reaching consequences for public agencies generally.

36

At bottom, the Environmental Parties defended against a suit that sought to compromise or curtail public rights. In *Pasadena* and *Serrano*, the courts held the *Joshua S.* exception didn't apply and attorney fees were not precluded where "a litigant defended against a suit that sought to *expand* the government's power to curtail important public rights." (*Pasadena*, *supra*, 22 Cal.App.5th at p. 165, italics added.) Here, we conclude *Joshua S.* does not preclude attorney fees and costs under section 1021.5 where a litigant defends against a suit that sought to *limit* the government's power to protect important public rights.

The Reserve argue we should follow *Save Our Heritage* and extend the *Joshua S.* exception because they are "not the type of party on whom private attorney general fees were intended to be imposed." (*Save Our Heritage*, *supra*, 11 Cal.App.5th at pp. 160-161.) In that case, the Fourth District, Division One declined to impose fees on a private, nonprofit organization who unsuccessfully challenged a city approval of a site development permit for a revitalization project in Balboa Park on the ground that the nonprofit's lawsuit "was precisely the type of enforcement action section 1021.5 was enacted to promote." (*Id.* at p. 162.)

While we are not convinced by the analysis in *Save Our Heritage*, the circumstances in that case were entirely distinguishable. The Save Our Heritage Organisation is a non-profit organization whose mission is preserving historic cultural and architectural resources. Their role is therefore closer to that of the Environmental Parties in this case. As the *Save Our Heritage* court recognized, their lawsuit is the kind

of action that section 1021.5 aims to incentivize and awarding attorney fees against them would do the opposite. By contrast, the Reserve is a homeowner's organization whose mission is advocating for the property interests of the private homeowners who are members. The incentive to litigate for such parties is obvious. They sought to protect their community's character and their own property values. We therefore disagree that the extension of the *Joshua S.* exception recognized in *Save Our Heritage* applies to the Reserve.

Our conclusion doesn't resolve the matter completely. As the Reserve argue, the trial judge did not address the threshold question of whether the section 1021.5 factors favor an award of attorney fees and costs to the Environmental Parties. As we've noted, section 1021.5 authorizes an award of attorney fees when the action has resulted in the enforcement of an important right affecting the public interest, a significant benefit has been conferred on the general public, and the necessity and financial burden of private enforcement are such as to make the award appropriate. Though the judge noted these factors, she rested her ruling on her holding that the *Joshua S.* exception applies. We've rejected that view, and our discussion should make clear that the Environmental Parties' defense *did* result in the enforcement of an important right affecting the public interest and confer a significant benefit on the general public. However, we believe the trial judge should resolve the factual question of whether the Environmental Parties' private enforcement actions were necessary.

We will therefore remand the case to the trial court for a consideration of that question and for the trial judge to exercise discretion in determining whether to make an ultimate award of attorney fees and costs. In making that determination, the trial judge should take into consideration the fact that the Environmental Parties were the advocates for the Avoidance Area as a resolution of their dispute with the Corridor Agency in the prior litigation and were signatories of the settlement agreement. The judge should also consider the fact that the Environmental Parties were named by the Reserve as real parties in interest. They did not seek to intervene in the litigation on their own.

## III

## DISPOSITION

We reverse the trial judge's order denying attorney fees and costs to the Environmental Parties under section 1021.5 and remand for a hearing on whether an award (and what amount) is appropriate. We affirm the judgment in all other respects. The Environmental Parties are entitled to recover their costs on appeal.

CERTIFIED FOR PUBLICATION

SLOUGH
J.

We concur:

MILLER
Acting P. J.

RAPHAEL
J.

39